# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br> Plaintiff, <br><br> v. <br><br> **WILLIE TORRES-GERENA**, <br> Defendant. | CRIM. NO. 24-018 (FAB) |

## REPORT AND RECOMMENDATION

Before me is defendant Willie Torres Gerena's ("defendant") Motion to Dismiss Count One of the Indictment. *See* Docket No. 44. But before I begin, let me point out that this is not your typical motion to dismiss an indictment premised on the strength and sufficiency of the Government's evidence. You see, the defendant here did not challenge the evidence gathered by the prosecution. Rather, the defendant contends that the sole charge in the indictment should be dismissed on constitutional grounds, asserting that the statute under which he was charged—18 U.S.C. § 2423(a)—infringes upon his constitutional rights. More specifically, the defendant asserts that 18 U.S.C. § 2423(a) unconstitutionally encroaches upon the privileges and immunities of U.S. citizens residing in Puerto Rico, thereby violating their Fifth and Fourteenth Amendment rights. After a careful review of the parties' arguments and relevant material, I **RECOMMEND** that the Motion to Dismiss be **DENIED**.

### I.    Relevant Factual Background

On May 27, 2023, the defendant served as the boxing coach for a 16-year-old female minor identified by her initials, "A.S.J The Government claims that the defendant transported the female from the municipality of Arecibo to the municipality of San Juan under the pretense of taking her to dinner. On their way back to Arecibo, the defendant is alleged to have taken

Case 3:24-cr-00018-FAB-MDM	Document 67	Filed 02/12/25	Page 2 of 15

*United States v. Willie Torres-Gerena*	Page 2
Report and Recommendation
Crim. No. 24-018 (FAB)

the female minor to a motel in Arecibo where he committed lewd acts against her. Sometime after leaving the defendant's car, the female reported the alleged encounter to law enforcement.

It is undisputed that all travel pertinent to this case took place within the island of Puerto Rico and within Puerto Rico's jurisdiction.

## II. Procedural Background

On January 24, 2024, the grand jury returned a one-count indictment against the defendant, charging him with transportation of a minor with the intent to engage in criminal sexual activity, in violation of Title 18, *United States Code*, Section 2423(a) ("Indictment"). On July 3, 2024, the defendant filed a Motion to Dismiss the Indictment ("Motion to Dismiss") claiming that § 2423(a) "violates [his] rights as a U.S. citizen under the Fourteenth Amendment as well as his Fifth Amendment right to due process through equal protection of the law." (Docket No. 44). In the defendant's view, while the statute clearly applies to Puerto Rico, it should not extend to transportation that takes place wholly and exclusively within Puerto Rico, as was the case here. In straightforward terms, the defendant asserts a constitutional challenge to § 2423(a), alleging that Congress lacks a rational basis for imposing criminal liability on the residents of Puerto Rico for conduct that it is unable to regulate within the fifty (50) states. The statute, the defendant claims, creates an impermissible and discriminatory distinction between United States citizens located in Puerto Rico versus United States citizens located in the continental United States.

The Government filed an opposition to the Motion to Dismiss ("Opposition"). *See* Docket No. 49. In its Opposition, the Government argued that the Territorial Clause empowers Congress to make the Mann Act,[1] which

---

[1] The Mann Act is also known as the "White Slave Traffic Act," 36 Stat. 825 (originally codified at 18 U.S.C. § 397, et seq., but later moved to 18 U.S.C. § 2421, *et seq*.

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 3 of 15

*United States v. Willie Torres-Gerena* Page 3
Report and Recommendation
Crim. No. 24-018 (FAB)

codifies § 2423(a), applicable to intra-territorial transportation of minors wholly within Puerto Rico.

The defendant did not file a reply to the Opposition. The presiding Judge referred the matter to the undersigned for the preparation of a Report and Recommendation. *See* Docket No. 45.

### III. Discussion

#### A. Statutory Background

Section 2423 was originally enacted in 1910 as part of the Mann Act, which is also known as the "White Slave Traffic Act of 1910," 36 Stat. 825, Ch. 395 (1910) (codified as amended at 18 U.S.C. §§ 2421-2428). It is currently codified at Chapter 117 of Title 18 of the United States Code, entitled "Transportation for Illegal Sexual Activity and Related Crimes." In 1998, Congress enacted "The Protection of Children from Sexual Predators Act" to, among other things, add subsection (b), dealing with coercion and enticement of minors. Pub. L. No. 105–314, 112 Stat. 2974 (1998). That same year, Congress amended Section 2423(a) to expressly include the term "commonwealth," directing its intended application to commonwealths, territories and possessions of the United States. So amended, Section 2423(a) now reads:

> (a) Transportation with intent to engage in criminal sexual activity.—A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, **or in any *commonwealth*, territory or possession of the United States**, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a) (emphasis added).

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 4 of 15

*United States v. Willie Torres-Gerena*                                                                Page 4
Report and Recommendation
Crim. No. 24-018 (FAB)

Based on the plain language of the statute, § 2423(a) explicitly applies to intra-commonwealth transportation, such as transportation within the geographical confines of the Commonwealth of Puerto Rico.[2]

---

[2] Puerto Rico became a Commonwealth in 1952. That year, the name of Puerto Rico changed to "Estado Libre Asociado de Puerto Rico" (which literally translated means "Associated Free State of Puerto Rico") yet is known or referred to in English–as the "Commonwealth of Puerto Rico." *United States v. Lebrón-Caceres*, 157 F. Supp. 3d 80, 84 (D.P.R. 2016), *amended*, No. CR 15-279 (PAD), 2016 WL 204447 (D.P.R. Jan. 15, 2016).

> It has been pointed out that the purpose of Congress in the 1950-1952 legislation was to accord Puerto Rico the degree of autonomy and independence normally associated with states of the Union, *Examining Bd. of Engineers, Architects and Surveyors v. Flores de Otero*, 426 U.S. 572, 594, 96 S. Ct. 2264, 49 L. Ed. 2d 65 (1976), and thus, that with such autonomy Puerto Rico ceased being a territory." *See Mercado–Flores*, 109 F. Supp. 3d [467,] 473–476 [(1st Cir. 2015)] (so arguing).
>
> A similar purpose guided Congress, however, in enacting the Foraker Act in 1900 and the Jones Act in 1917. *See [People of Porto Rico v.] Rosaly*, 227 U.S. [271,] 274, 33 S. Ct. 352 (explaining that purpose of the Foraker Act was "to give local self-government conferring an autonomy similar to that of the states"). Further, the same goal led Congress to enact the Jones Act. Specifically, the "aim of . . . [the Jones Act] was to give Puerto Rico full power of local self-government with an autonomy similar to that of the states . . . ." *Bacardi Corporation of America v. Domenech*, 311 U.S. 150, 167, 61 S. Ct. 219, 85 L. Ed. 98 (1940). Notwithstanding congressional aim at self-government, Puerto Rico was held to be a territory. *[People of Porto Rico] v. Shell*, 302 U.S. [253,] at 261–262, 58 S. Ct. 167.
>
> \* \* \*
>
> Thus, the court cannot discern any form of congressional authorization in 1950 or at any other point thereafter for Puerto Rico to modify provisions defining the relationship between Puerto Rico and the United States. The modifications legislated and implemented between 1950 and 1952 left intact the basic territorial relationship established at the turn of the Twentieth Century.

*Lebron-Caceres*, 157 F. Supp. at 96. Though labeled a "commonwealth," the evolving relationship between Puerto Rico and the United States confirms Puerto Rico's territorial status. *See id.* at 90.

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 5 of 15

*United States v. Willie Torres-Gerena*   Page 5
Report and Recommendation
Crim. No. 24-018 (FAB)

### B. <u>The Motion to Dismiss</u>

Returning now to defendant's Motion to Dismiss. The defendant claims that 18 U.S.C. § 2423(a) unlawfully infringes upon the privileges and immunities of United States citizens located in Puerto Rico.[3] In essence, the defendant claims that § 2423(a) violates the Fourteenth Amendment and the equal protection component of the Fifth Amendment because it treats individuals who transport minors within Puerto Rico differently from those who engage in exactly the same conduct within a state, with no justification for the disparity. Put simply, the defendant contends that, Congress has no rational basis to legislate criminal liability upon residents of Puerto Rico for conduct that is not specifically regulated in the fifty (50) states. The defendant thus argues that the current application of § 2423(a) to residents of Puerto Rico is unconstitutional, and as a result, the sole count of the Indictment must be dismissed.

In opposing the Motion to Dismiss, the Government contends, *inter alia*, that controlling Supreme Court and First Circuit precedent have recognized that under the authority of the Territorial Clause, Congress can treat a territory or commonwealth differently from the fifty (50) states and said differential treatment does not necessarily conflict with the fundamental rights of United States citizens living in territories, like Puerto Rico. Per the Government's contention, therefore, dismissal is inapposite.

The undersigned agrees with the Government and is not persuaded by the defendant's theory.

### C. <u>Legal Analysis and Application of Relevant Precedent</u>

The defendant frames his argument by suggesting that § 2423(a) constitutes targeted discrimination against Puerto Rico residents, thereby

---

[3] In 1917, Congress enacted the Jones Act, providing for a popularly elected bicameral legislature and a bill of rights, and granting United States Citizenship to the people of Puerto Rico. 39 Stat. 951, P.R. Laws Ann. tit. 1, Historical Documents.

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 6 of 15

*United States v. Willie Torres-Gerena*                                                                 Page 6
Report and Recommendation
Crim. No. 24-018 (FAB)

violating equal protection principles. However, this assertion lacks merit. The statute, by its plain language, applies universally to all individuals— residents of Puerto Rico or otherwise—who transport a minor for the purpose of engaging in criminal sexual activity on the island. *United States v. Montijo-Maysonet*, 974 F.3d 34, 45 (1st Cir. 2020). In the case at hand, the defendant is a resident of Puerto Rico, but as previously noted, the statute applies equally to *anyone*, whether a resident or non-resident, who engages in the conduct prohibited under § 2423(a) within the confines of Puerto Rico. So, for instance, a resident of Puerto Rico, Arkansas, New York, or Minnesota, just to name a few different places, who engages in the conduct proscribed by § 2423(a) within the jurisdiction of Puerto Rico, could be equally charged and prosecuted under the statute.

In his Motion to Dismiss, however, the defendant argues that Puerto Rico's enforcement of § 2423(a) lacks justification under a rational basis review, neglecting the fact that Congress may treat territories differently as long as the law meets the rational-basis standard. Ordinarily, a law survives an equal protection challenge if the distinction it draws is "rationally related to a legitimate government interest." *United States v. Vaello-Madero*, 956 F.3d 12, 18 (1st Cir. 2020) (quoting *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 533 (1973)). *See also Montijo-Maysonet*, 974 F.3d at 44. Under this standard, a law is deemed valid if there exists any plausible set of facts that could rationally support the classification. *See F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) ("if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."). This presumption of validity is strong, and those challenging the law carry the burden of disproving "every conceivable basis" that could justify it. *Id.* at 314-315. If there are "plausible reasons" behind Congress' actions, the court's inquiry ends. *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980).

Case 3:24-cr-00018-FAB-MDM    Document 67    Filed 02/12/25    Page 7 of 15

*United States v. Willie Torres-Gerena*                                                          Page 7
Report and Recommendation
Crim. No. 24-018 (FAB)

Similarly, Congress is not required to explicitly state its reasons for enacting a statute for it to withstand rational basis scrutiny. *See United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179 (1980) (Where there are "plausible reasons" for Congress' action, "our inquiry is at an end."). This standard of review is a paradigm of judicial restraint. So, the classification may be based on "rational speculation" even if unsupported by specific evidence or data. *Beach Commc'ns, Inc.*, 508 U.S. at 314.

The undersigned finds that the distinction in how § 2423(a) is applied within Puerto Rico as opposed to the fifty states is, as Congress has described it, rooted in the territorial and geographical nature of the island. Since 1998, when the statute was amended, § 2423 has been unequivocally applicable to Puerto Rico, as it explicitly encompasses transportation "in any *commonwealth*, territory or possession of the United States." 18 U.S.C. § 2423(a); *see also* P.L. 105-314 (1998 amendment adding the term "commonwealth"). Section 2423(a) thus explicitly applies to any intra-commonwealth transportation or intra-territorial transportation. The legislative history of the 1998 Amendment clearly reveals that its primary aim was to adopt a stringent approach to combat the sexual exploitation of children, making the only rational inference for including the term commonwealth in § 2423(a) to ensure that transportation of minors within Puerto Rico remained a punishable offense. Indeed, Congress has a legitimate interest in eliminating sexual exploitation, particularly of minors, from U.S. territories. The undersigned therefore agrees with the Government that the most reasonable inference from the inclusion of "commonwealth" in § 2423(a) is that Congress sought to ensure that transporting minors for illicit purposes within Puerto Rico would remain a punishable offense, consistent with its broader objectives.

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 8 of 15

*United States v. Willie Torres-Gerena*                                                                 Page 8
Report and Recommendation
Crim. No. 24-018 (FAB)

Accordingly, the defendant's contention that §2423(a) violates his fundamental right to be free from discriminatory punishment under the Fourteenth Amendment is without merit.

The defendant also claims that §2423(a) violates the Fifth Amendment's Equal Protection Clause. And while the defendant recognizes that the First Circuit has held that §2423(a) did *not* violate the Fifth Amendment's Equal Protection Clause, *see Montijo-Maysonet*, 974 F.3d at 45; *United States v. Ríos-Rivera*, 913 F.3d 38, 44 (1st Cir. 2019), he nevertheless claims that those decisions were decided on plain error review and are therefore not binding. *See United States v. Colon-Maldonado*, 953 F.3d 1, 7 (1st Cir. 2020) (quotation marks and citation omitted).

In *Montijo-Maysonet, supra,* the First Circuit rejected the same argument the defendant advances here. There, the First Circuit determined that the differential treatment of states and territories under § 2423(a) is *not* without a rational basis, as such treatment is a legitimate exercise of congressional authority under the Territorial Clause. Said rationale is decidedly relevant, well-founded, and the Court adopts it here, despite the defendant's protestations. While *Montijo-Maysonet* was decided based on plain error, this does not prevent the Court from adhering to its reasoning.

> To be sure, its crystal clear [that] a law targeting people of Puerto Rican origin would draw the strictest scrutiny. *See DiMarco-Zappa [v. Cabanillas]*, 238 F.3d [25,] 36 [(1st Cir. 2003)]. But § 2423(a) has a broader sweep: it applies to *anyone* (tourists, transplants, and travelers) who transport[s] a minor for criminal sex on the island. No controlling case holds that folks join a protected class once they set foot in Puerto Rico. Indeed, under existing precedent, even the millions of U.S. citizens who live there—who can't influence by vote the federal laws that regulate them (unless they leave their homes for the mainland)—have not been recognized as a protected class, even though they're

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 9 of 15

*United States v. Willie Torres-Gerena*  Page 9
Report and Recommendation
Crim. No. 24-018 (FAB)

> "the very essence of a politically powerless group." *United States v. Vaello Madero*, 356 F. Supp. 3d 208, 214 (D.P.R. 2019). Rather, in *Harris v. Rosario*, the Court held that, without violating the Constitution's Equal Protection mandate, Congress could "treat Puerto Rico differently from States so long as there [was] a rational basis for its actions." 446 U.S. 651, 651–52, 100 S. Ct. 1929, 64 L. Ed. 2d 587 (1980); *see also Vaello-Madero*, 956 F.3d at 21–23 (holding it was "beyond question" that "precedent require[d] us to apply rational basis review to the question before us"—whether a federal benefit program that discriminated against Puerto Rico residents violated Equal Protection—while noting that *Harris* was a summary disposition that should be read narrowly).
>
> Therefore, in *Ríos-Rivera*, we rejected the same argument Montijo raises—that § 2423(a) warrants "heightened scrutiny" even on plain error review—because *Harris* foreclosed it. 913 F.3d at 44. Like Montijo, "Ríos d[id] not seriously challenge the notion that Congress may have limited [§ 2423(a)]'s applicability within the fifty states because it implicitly recognized potential constitutional limits on its power." *Id.; see United States v. Morrison*, 529 U.S. 598, 618, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000) (blocking a Congressional attempt to regulate intrastate violence "not directed at the instrumentalities, channels, or goods involved in interstate commerce," whose regulation "has always been the province of the States"). We held, therefore, that § 2423(a)'s differential treatment of states and territories did not clearly lack a rational basis. *See Ríos-Rivera*, 913 F.3d at 44. And so[,] we must [reject defendant's arguments] here.

*Montijo-Maysonet*, 974 F.3d at 45.

For the same reasons espoused by the First Circuit above, I similarly discard the defendant's arguments. While the defendant correctly notes that *Montijo-Maysonet* and *Ríos-Rivera* were decided on a plain error standard, he overlooks the fact that the analysis in those cases set the framework for the

Case 3:24-cr-00018-FAB-MDM Document 67 Filed 02/12/25 Page 10 of 15

*United States v. Willie Torres-Gerena* Page 10
Report and Recommendation
Crim. No. 24-018 (FAB)

conclusion that Congress, acting under the Territorial Clause, has the authority to treat a territory differently than the fifty (50) states without infringing on the fundamental rights of United States citizens. *See also Dávila–Pérez v. Lockheed Martin Corporation*, 202 F.3d 464, 468–469 (1st Cir. 2000) (noting that Puerto Rico is a territory subject to Congressional power under the Territorial Clause); *Maysonet–Robles v. Cabrero*, 323 F.3d 43, 53 (1st Cir. 2003) (describing Puerto Rico as an unincorporated territory of the United States); *United States v. Rivera–Torres*, 826 F.2d 151, 154 (1st Cir. 1987) ("Congress can, pursuant to the plenary powers conferred by the Territorial Clause, legislate as to Puerto Rico in a manner different from the rest of the United States"); *Popular Democratic Party v. Com. of Puerto Rico*, 24 F. Supp. 2d 184, 194 (D.P.R. 1998) ("Even after the enactment of Public Law 600, Congress has not hesitated to treat Puerto Rico as a territory. In the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 *et seq.,* Sec. 20(a), 21(a), and (31), Congress explicitly defined Puerto Rico as a "possession." Thus, the Act applied to Puerto Rico intra[-]territorially.").

The defendant here, like in *Montijo-Maysonet,* has failed to identify "controlling precedent" that makes it "indisputable" that § 2423(a) violates the Fifth Amendment. 974 F.3d 34, 45 (quoting *United States v. Morosco*, 822 F.3d 1, 21 (1st Cir. 2016)). By contrast, Supreme Court precedent further confirms that under the Territorial Clause, Congress may treat Puerto Rico differently from States so long as there is a rational basis for its actions. *See e.g. Harris v. Rosario*, 446 U.S. 651 (1980).[4]

Additionally, the defendant fails to provide any evidence suggesting that § 2423(a) was specifically designed to discriminate against Puerto Ricans. Instead, it represents a valid use of Congress' powers under the Territorial

---

[4] For that reason, in *Harris* the Supreme Court decidedly held that Congress could provide less assistance to Puerto Rico than to the States under the Aid to Families with Dependent Children program.

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 11 of 15

*United States v. Willie Torres-Gerena*                                                        Page 11
Report and Recommendation
Crim. No. 24-018 (FAB)

Clause of the Constitution.[5] Like the Court in *Lebrón-Caceres* correctly observed: one of Congress' explicit powers is the power to make rules and regulations respecting territories and other property belonging to the United States. U.S. CONST. art. IV, § 3. "And there is no indication that at any point Congress has deprived itself of that power in legislating for Puerto Rico." *Lebrón-Caceres*, 157 F. Supp. 3d at 96.

In *Lebrón-Caceres*, supra, the Court presented a thorough and well-documented reference to case law, statutory provisions, and historical context, offering a valuable framework for examining the complexities of Puerto Rico's relationship with the United States.

> All territory within the jurisdiction of the United States not included in any state must necessarily be governed by or under the authority of Congress. *First Nat. Bank v. County of Yankton*, 101 U.S. 129, 133, 25 L. Ed. 1046 (1879). Congress has the entire dominion and sovereignty, national and local, Federal and state, and full legislative power over all subjects upon which the legislature of a state might legislate within the state; and may, at its discretion, entrust that power to the legislative assembly of a territory. *Simms v. Simms*, 175 U.S. 162, 168, 20 S. Ct. 58, 44 L. Ed. 115 (1899). In the exercise of that power, it is not subject to the same constitutional limitations as when it is legislating for the United States, *Hooven & Allison [v. EVATT]*, 324 U.S. [653,] 673, 65 S. Ct. 870; may authorize territories to enjoy a qualified form of sovereignty under United States rule, *De Geofroy v. Riggs*, 133 U.S. 258, 268–269, 10 S. Ct. 295, 33 L. Ed. 642 (1890); confer upon a territorial government an autonomy similar to that of states; *Harris v. Boreham*, 233 F.2d 110, 114 (3d Cir. 1956); and act "in a manner that would exceed its powers, or at least would be very unusual, in the context of

---

[5] This stands in contrast to *United States v. Windsor*, 570 U.S. 744, 770 (2013), where the Court found that the legislative history and text of the Defense of Marriage Act reflected a clear intent to limit recognition of same-sex marriages.

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 12 of 15

*United States v. Willie Torres-Gerena* Page 12
Report and Recommendation
Crim. No. 24-018 (FAB)

> national legislation enacted under other powers delegated to it." *Palmore v. United States*, 411 U.S. 389, 398, 93 S. Ct. 1670, 36 L. Ed. 2d 342 (1973).
>
> ***From that perspective, territorial governments are entirely a creation of Congress***. *United States v. Wheeler*, 435 U.S. 313, 322, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978). They owe all their powers to the statutes of the United States conferring on them the powers which they exercise, and which, as a Congressional delegation, are liable to be withdrawn, modified or repealed at any time by Congress. *United States v. Kagama,* 118 U.S. 375, 379–380, 6 S. Ct. 1109, 30 L. Ed. 228 (1886). What is more, the right of Congress to revise, alter and revoke delegated powers does not diminish the powers while they reside in the territory. *Bluebeard's Castle, Inc. v. Government of the Virgin Islands*, 321 F.3d 394, 397 (3d Cir. 2003). ***Congress retains plenary power over the territorial government until such time as the territory is made independent***. *Hooven & Allison*, 324 U.S. at 675, 65 S. Ct. 870.

*Lebron-Caceres*, 157 F. Supp. 3d at 96–97.

> Whether and how a federal statute applies to Puerto Rico is a question of Congressional intent. *Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 320 (1st Cir. 2012). That is why Puerto Rico may be found to be included within one act whose coverage extends to states or territories, and excluded from another. *Id.* Thus, Congress explicitly defined Puerto Rico as a possession in Section 1301(29)(b) of the Federal Aviation Act of 1958, 49 U.S.C. § 1301, *et seq. See Popular Democratic Party*, 24 F. Supp. 2d at 193–194 (so noting); and excluded Puerto Rico from provisions allowing states to authorize municipalities to seek relief under Chapter 9 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101 (4), 101 (52), 109(c), *Franklin [v. Commonwealth of Puerto Rico]*, 805 F.3d [322,] 325, 330–345 [(1st Cir. 2015)] (describing and analyzing preemptive effect of enactment).

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 13 of 15

*United States v. Willie Torres-Gerena*                                                                    Page 13
Report and Recommendation
Crim. No. 24-018 (FAB)

*Lebron-Caceres*, 157 F. Supp. 3d at 104.

Moving on then to the defendant's challenge under the Citizenship Clause. This argument too must be rejected. First, as the Government points out, Puerto Ricans are undeniably United States citizens, as affirmed by 8 U.S.C. § 1402, rendering any distinction in national origin between Puerto Rico and the states non-existent. Second, as noted, the statute in question applies equally to non-Puerto Ricans who engage in similar conduct within Puerto Rico, demonstrating that the statute targets the conduct itself, not the identity of the defendants.

Finally, regarding defendant's claim of a violation of the Commerce Clause, the defendant argues that § 2423(a) lacks language to support its justification under the Commerce Clause's interstate commerce power and thus contends that an offense committed within Puerto Rico cannot substantially affect interstate commerce. This argument is flawed. The defendant mistakenly assumes that Congress' authority to enact laws that treat Puerto Rico differently from the states is exclusively derived from the Interstate Commerce Clause of the United States Constitution, as it applies to Puerto Rico. As described in great detail above, that is not the case. Second, the defendant erroneously assumes that the offense at issue has no impact on interstate or foreign commerce and therefore Congress has no authority to regulate it. Again, as outlined in the preceding paragraphs, Congress' authority to enact laws distinguishing between Puerto Rico and the states is firmly established.

On a final note, the defendant ends his Motion to Dismiss with the following passage, which resembles a rallying cry for equal treatment of Puerto Ricans compared to their mainland contemporaries. "This case presents an opportune moment for the Court to decide an issue of constitutional significance to not only Mr. Torres but also to the over 3.2 million U.S. Citizens living in Puerto Rico for whom equality under the law has been a lofty ideal

Case 3:24-cr-00018-FAB-MDM   Document 67   Filed 02/12/25   Page 14 of 15

*United States v. Willie Torres-Gerena* Page 14
Report and Recommendation
Crim. No. 24-018 (FAB)

not yet realized. The doctrine of separate and unequal has persisted in Puerto Rico for too long and continues on shaky constitutional ground. This Court can now right that wrong." (Docket No. 44).

The undersigned offers no opinion about the wisdom of Puerto Rico's current territorial status. The situation is as it stands. And while reasonable minds may debate whether Congress *should* be permitted to treat United States citizens residing in commonwealths or territories—like Puerto Rico—differently than United States citizens residing in its fifty (50) states, that issue is not before the Court, nor is it one that Puerto Rico has the authority to resolve independently. The question at hand is not one of moral or idealistic considerations of fairness and equality with respect to Congress' treatment of its commonwealths or territories, but rather whether Congress, exercising its authority under the Territorial Clause, has acted within its constitutional powers. In the present case, the answer to that question is undeniably yes.

While the defendant unsuccessfully argues that Congress' treatment of Puerto Rico and other territories is inequitable to the defendant, it is well within Congress' constitutional authority and legal prerogative to distinguish between states and territories. The Supreme Court has consistently held that the Due Process and Equal Protection Clauses do not mandate geographic equality, allowing a legislature to treat one geographic area differently from another as long as there is a rational basis for such distinctions. *See e.g. Vaello Madero*, 142 S. Ct. at 1542. When Congress has made its intent clear, courts "must give effect to that intent, even if it defies our settled expectations." *See United States v. Cotto-Flores*, 970 F.3d 17, 34 (1st Cir. 2020) (citing *Miller v. French*, 530 U.S. 327, 328 (2000)). "So[,] when a statute like § 2423(a) clearly means to reach more conduct in Puerto Rico than it does in the states, [courts] have to enforce it as written, even if it doesn't single out "Puerto Rico" in so many words. *See Dávila-Pérez v. Lockheed Martin Corp.*, 202 F.3d 464, 467–68 (1st Cir. 2000) (construing the words "Territory or Possession outside the

Case 3:24-cr-00018-FAB-MDM    Document 67    Filed 02/12/25    Page 15 of 15

*United States v. Willie Torres-Gerena*                                                                Page 15
Report and Recommendation
Crim. No. 24-018 (FAB)

continental United States," considering the statutory context and legislative history, to cover Puerto Rico).

In sum, the defendant's Motion to Dismiss fails to provide any basis for disregarding Congress' clear intent. The plain language of § 2423(a), along with the rulings of both the Supreme Court and the First Circuit, and the legislative history of the Mann Act, unequivocally demonstrate that Congress intended § 2423(a) to apply to conduct occurring entirely within Puerto Rico, and that it may exercise that power under the Territorial Clause. Section 2423(a) is thus clearly designed to cover a broader range of conduct in Puerto Rico than in the states, and as such, it must be enforced as written. *See also Cotto-Flores*, 970 F.3d at 34.

### IV.  Conclusion

For the foregoing reasons, I **RECOMMEND** that the defendant's Motion to Dismiss (Docket No. 44) be **DENIED**.

**IT IS SO RECOMMENDED**.

The parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this <u>12th</u> day of February 2025.

s/*Marshal D. Morgan*
Marshal D. Morgan
United States Magistrate Judge
for the District of Puerto Rico